**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| ALAN KIRKPATRICK,<br><br>Plaintiff,<br><br>v.<br><br>ALBANESE CONFECTIONARY GROUP, INC.,<br><br>Defendant. | ) | Case No. 2:26-cv-80-AZ |

**<u>OPINION AND ORDER</u>**

This matter is before the Court on Defendant's Motion to Dismiss Count II of Plaintiff's Complaint [DE 3], filed on March 19, 2026. Plaintiff filed a response on April 9, 2026, and Defendant filed a reply on April 14, 2026. DE 7, 8. On May 15, 2026, the parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). DE 13. For the reasons discussed, the Court will deny the motion.

**Background**

The Court draws its factual summary from Plaintiff's Complaint, as it must at this procedural posture. Plaintiff Alan Kirkpatrick began working for Defendant Albanese Confectionary Group, Inc. in 2020 as a "Gummi Packaging Operator" at its candy factory located in Merrillville, Indiana, DE 1 at ¶¶ 7-9. In January 2021, while operating a packaging machine for Defendant's candy, Plaintiff suffered a stroke "[c]aused by ischemic cardiomyopathy, a chronic condition that affected the blood flow to Plaintiff's brain." *Id.* at ¶ 10. A few months later, presumably after some recovery and a diagnosis, Plaintiff alerted Defendant to his ischemic cardiomyopathy, and

Defendant provided Plaintiff with some unspecified accommodation. *Id.* at ¶¶ 11-12. Later, in December 2021, Plaintiff had an implantable cardioverter defibrillator placed in his chest and took six weeks off work with Defendant's consent. *Id.* at ¶ 13.

When Plaintiff returned to work, he did so on "light duty," and Defendant confirmed the accommodation in writing to Plaintiff in February 2022. *Id.* Over the next three years, Plaintiff apparently worked without issue subject to the accommodation. Then, in the early morning hours of May 17, 2025, Plaintiff suffered a seizure on the candy factory floor while sweeping with a broom. *Id.* at ¶¶ 14-15. As a result of the seizure, which Plaintiff says was "caused at least in part by his ischemic cardiomyopathy," *id.* at ¶ 14, Plaintiff lost control of his muscle movements and struck some of the packaging machinery with the broom. *Id.* at ¶ 16. Plaintiff alleges he has no recollection of the seizure and after it occurred, he continued sweeping until he noticed a broken control panel on the machine and alerted his supervisor. *Id.* at ¶ 17.

Plaintiff's shift ended, but the same day (May 17) he returned to work for another shift but "was unable to concentrate or communicate well" and was sent home. *Id.* at ¶ 18. Plaintiff scheduled an appointment with his cardiologist for May 20 hoping to receive a "return to work" letter. *Id.* at ¶ 19. But instead, on either May 20 or May 23 (the Complaint is ambiguous as to the precise date), Plaintiff went to the emergency room instead. *Id.* at ¶ 20. On May 21, Defendant informed Plaintiff that it was terminating his employment because surveillance video from the factory

floor showed Plaintiff damaging the aforementioned machinery with his broom. *Id.* at ¶ 21.

After his employment was terminated, Plaintiff alleges that Defendant failed to notify him of the ability to continue his employer-provided health insurance coverage for more than three months, resulting in him paying out-of-pocket for medical care relating to his seizure. On top of that, Plaintiff says that Defendant showed the surveillance camera footage of Plaintiff's seizure to his former coworkers and informed them that he "went nuts" on the job. *Id.* at ¶¶ 25-26. Plaintiff now brings three claims against Defendant: (1) employment discrimination in violation of the Americans with Disabilities Act (ADA); (2) violation of the Consolidated Omnibus Budget Reconciliation Act (COBRA) which allows for terminated employees to temporarily continue their employer-provided health coverage; and (3) a state law claim for public disclosure of private facts.

**Discussion**

To survive a motion to dismiss, a "complaint must contain allegations that collectively 'state a claim to relief that is plausible on its face.'" *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court accepts "all well-pleaded allegations of fact as true and draw all reasonable inferences in the plaintiffs' favor." *Alarm Detection Sys.*, 930 F.3d at 821. But bare "[l]egal conclusions" such as an assertion Defendant violated a statute or common law duty without more, "do not get the same benefit;" and the Court will disregard them. *Id.* (citing *McCauley v. City of Chicago*,

671 F.3d 611, 616 (7th Cir. 2011)). "If the well-pleaded allegations plausibly suggest—as opposed to possibly suggest—that the plaintiffs are entitled to relief, the case enters discovery," otherwise "dismissal is appropriate." *Id.* (citations omitted). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" in evaluating the pleadings at issue. *Iqbal*, 566 U.S. at 679.

Defendant argues that Count II of Plaintiff's Complaint (the COBRA violation count) must be dismissed for failing to meet the pleading standards of Rule 8(a) of the Federal Rules of Civil Procedure because it "does not allege any ascertainable demand for damages," fails to plead essential elements of a COBRA claim, and otherwise fails to state a claim because it is implausible. DE 3 at 1. None of these arguments persuade the Court to dismiss any aspect of Plaintiff's Complaint.

First, Defendant argues that Count II fails to "specify any ascertainable demand for damages" and therefore fails to comply with Rule 8(a) of the Federal Rules of Civil Procedure. DE 3 at 2. This argument fails. In making this argument, Defendant selectively quotes from Paragraph 40 of Plaintiff's Complaint in which Plaintiff alleges that he "incurred significant damage and suffered other harm." DE 1 at ¶ 40. The full allegation of this paragraph provides more than adequate notice of what Plaintiff's claim is and what damages he seeks to recover:

> As a direct and proximate result of Defendant's failure to provide Plaintiff with the required notice, Plaintiff lacked continuation healthcare insurance coverage for medical expenses he incurred as a result of the Stroke [*sic*], and as a result incurred significant damages and suffered other harm.

*Id.* It is thus plain that Plaintiff is seeking to recover his out-of-pocket medical expenses incurred. Under the liberal pleading standards of the Federal Rules of Civil Procedure, this is more than sufficient to put Defendant on fair notice of Plaintiff's claim.

Defendant maintains, without citing anything in support, that Plaintiff is required at the pleading stage to identify "what medical expenses were incurred, when they were incurred, what amounts remain unpaid, or what specific harm resulted from the alleged lack of continuation of coverage." DE 8 at 2. The Federal Rules of Civil Procedure impose no such burden. *See* Fed. R. Civ. Pro. 8(a)(2) (requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief"). At best, Defendant seems to be implying that Count II should be subjected to the heightened pleading standard found in Rule 9(b), but that Rule only applies to claims sounding in fraud. *See Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007) (a plaintiff "alleging fraud . . . must state with particularity the circumstances constituting fraud"); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012) (Rule 9(b)'s particularity requirement "call[s] for the first paragraph of any newspaper story: "'the who, what, when, where, and how"' of any alleged fraud). But Count II does not sound in fraud, so Rule 9(b) is irrelevant. "Just as Rule 9(b) makes no mention of municipal liability, neither does it refer to employment discrimination. Thus, complaints in these cases, as in most others, must satisfy only the simple requirements of Rule 8(a)." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513 (2002).

Second, Defendant argues that Count II fails to state a claim because "Plaintiff does not allege that he would have elected continuation coverage had timely notice been provided, or that he was financially able to pay the premiums for such coverage." DE 3 at 3. While Plaintiff does not meaningfully respond to this argument in his brief, Defendant cites no authority in support of this argument either. Without some authority that requires Plaintiff to specifically and affirmatively allege that he would have elected a continuation of coverage or that he was financially able to pay COBRA premiums, the Court will not dismiss Count II on this basis. Bare assertions unsupported by relevant facts or authority do not a successful argument make. *See United States v. Miles*, 86 F.4th 734, 739 (7th Cir. 2023) (disregarding argument where the party "does not provide support from case law or the factual record"); *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived .... It is not this court's responsibility to research and construct the parties' arguments."). What's more, the Complaint alleges a causal connection between Defendant's failure to provide timely notice of continuation of coverage with Plaintiff's harm in the very paragraph that Defendant's other arguments focus on. *See* DE 1 at ¶ 40 ("As a direct and proximate result of Defendant's failure to provide Plaintiff with the required notice, Plaintiff lacked continuation healthcare insurance coverage for medical expenses…"). Plaintiff need not spell out his claim further.

Third, Defendant argues that Plaintiff's claim is legally implausible because in the aforementioned Paragraph 40, Plaintiff's Complaint refers to "the Stroke," and that implies that Plaintiff's stroke occurred around the time of his termination in May 2025, but elsewhere in the Complaint Plaintiff alleges that he suffered a stroke in 2021. *See* DE 1 at ¶ 10. Plaintiff responds that this was a typographical error and that in Paragraph 40 he meant to refer to his "Seizure" which occurred shortly before his termination in May 2025, as referenced elsewhere in the Complaint. Defendant replies that this fails to meet its own technical definition of what a "typographical error" is and demands dismissal on this basis. DE 8 at 2 (stating that Plaintiff has "a fundamental misunderstanding of what constitutes a typographical error."); *id.* ("A typographical error occurs when a writer intends to type one word but inadvertently types a different word due to a mechanical mistake—such as striking the wrong key or transposing letters.").

This argument makes a mountain out of a molehill. Plaintiff's Complaint makes numerous references to suffering a stroke in January 2021 and its effects over the following months. DE 1 at ¶¶ 10-13. Elsewhere he describes a seizure he suffered at work in May 2025, shortly before Defendant terminated his employment. *Id.* at ¶¶ 14-22. In the Court's view, it is clear that Plaintiff meant to reference his seizure and not his stroke in Paragraph 40. Indeed, Paragraph 23 of the Complaint explains effectively the exact same thing as Paragraph 40 and uses the correct "s-word":

> After terminating Plaintiff, Defendant terminated Plaintiff's health insurance coverage immediately and did not notify Plaintiff of the availability of any continuation coverage until September 23, 2025, resulting in him remaining without health

> insurance coverage for the costs of his hospitalization and treatment following *the Seizure*.

*Id.* at ¶ 23 (emphasis added). Plaintiff's claim is only "implausible" if read uncharitably and myopically. But the Federal Rules of Civil Procedure require that "[p]leadings must be construed so as to do justice." Fed. R. Civ. Pro. 8(e). Plaintiff has clarified that he meant seizure, not stroke, in Paragraph 40 and with that correction in mind, Plaintiff's claim is plausible. Nothing more is required.

## Conclusion

For the reasons discussed, Defendant's Motion to Dismiss Count II of Plaintiff's Complaint [DE 3] is **DENIED**.

So ORDERED this 18th day of September 2026.

*/s/ Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT